UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BILLA SINGH,

              Petitioner,

                                          **No. 10-CV-0462(MAT)**
         -vs-                             **DECISION AND ORDER**

JANET NAPOLITANO, in her official
capacity, Secretary, Department of
Homeland Security, et. al.,

              Respondents.

## I.   Introduction

Represented by retained counsel, Petitioner Billa Singh, a/k/a Makkhan Singh, a/k/a Makhan Singh ("Singh" or "Petitioner"), commenced this proceeding by a pleading titled "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief and Request for TRO and/or Preliminary Injunction and Complaint for Writ of Mandamus" (hereinafter, "the Petition"). (Docket No. 1). Singh, a native of India and an alien under a final order of exclusion from the United States, challenges a decision by the former Immigration and Naturalization Service ("INS") rescinding the grant of asylum in August 1997.  Singh is not presently in the physical custody of Respondents (hereinafter collectively referred to as "DHS"); he has posted bond and is subject to reporting requirements set forth in an Order of Supervision issued by DHS. However, the parties do not dispute that Singh is "in custody" for purposes of 28 U.S.C. § 2241.

## II.  Factual Background and Procedural History

On February 3, 1993, Singh arrived at JFK International Airport in New York City and attempted to enter the United States

without valid documentation. While he was detained, Singh provided an affidavit stating his name was "Makhan Singh." Although the spelling "Makkhan" was used on the forms completed by the INS, when Singh signed his name he used the spelling "Makhan." Singh was assigned an "A number" at that time.

Because it did not appear that Singh was eligible to enter this country legally, exclusion proceedings were commenced by service upon him of a "Notice to Applicant for Admission, Detained/Deferred For Hearing Before Immigration Judge" ("NTA") on February 4, 1993. See 8 U.S.C. §§ 1229(a), 1229a, 1225.

On July 8, 1993, Singh filed his first request for asylum in connection with his exclusion proceedings. On the Biographical Information Form ("the G-325A"), Singh gave his name as "Makhan Singh" and his birth-year as 1962.[1] Singh asserted that he did not use any aliases. Asserting that he had been detained and tortured in the past for associating with individuals affiliated with the Sikh movement, he requested asylum based upon his fear that he would be tortured and killed by the police if he returned to India because he favored creation of an independent Sikh nation.

In November 1994, an immigration judge ("IJ") in San Francisco, California issued an exclusion order[2] against

---

[1]
    Singh's complete birth-date has been omitted for privacy purposes from this Decision and Order. The Court notes that Singh gave the same month and day when asked for his date of birth, but used different years on different applications.

[2]
    An order of exclusion, issued pursuant to 8 U.S.C. § 1229a, is essentially an order of removal issued regarding an arriving alien who was stopped at the border when seeking entry into the United States. An alien who has been permitted entry into the United States or is otherwise found within the country is placed in proceedings for removal. See generally 8 U.S.C. § 1229a(a) and (e); See also

Makkhan Singh. The IJ also denied Singh's request for asylum. The exclusion order was never executed, as Singh did not appear when served with a notice of removal.

Singh never appealed the exclusion order and does not challenge it in this proceeding. Nor did he appeal the denial of his 1993 request for asylum by the IJ in November 1994. Instead, Singh filed an employment application and an asylum application under a different name and provided false biographical information in both. Specifically, on December 22, 1994, Singh signed a request-for-asylum form under his true name, Billa Singh,[3] and a different "A number" than the number given to him when he initially was admitted to this country. The application appears to have been filed on December 30, 1994, with the former Immigration and Naturalization Service ("the INS").[4] Singh listed his birth-year as 1963 (instead of 1962) and gave false information about his arrival in the United States, asserting that he had entered this country on October 10, 1994, at San Diego, California. Finally, Singh gave a different basis for asylum than in his first asylum

---

Vaccaro Declaration, ¶¶ 9, 12. Under the statute providing for removal proceedings, the term "removal" is also applied to matters involving exclusion. See 8 U.S.C. § 1229a (a), (b),(e)(2). This Decision and Order uses the terms "removal" and "exclusion" interchangeably.

[3]

Under the law in effect at that time, there was no prohibition to filing a successive application for asylum. See 8 U.S.C. § 1158 (1994), a copy of which is attached as Exhibit E to the Petition. The prohibition against successive asylum applications did not go into effect until September 30, 1996.

[4]

On March 1, 2003, the Immigration and Naturalization Service ("INS") was abolished and its functions transferred to the Department of Homeland Security ("DHS") pursuant to the Homeland Security Act of 2002, 116 Stat. 2135; Pub.L. 107-296, codified at 6 U.S.C. § 101 et seq.

application, newly claiming that his brother had been killed by the Indian police because he supported the Sikh cause, and that he (Singh) feared persecution on the basis of his Sikh religion were he to return to India. The biographical information provided in this request for asylum was consistent with the 1994 G-325A but inconsistent with Singh's first request for asylum filed under the name Mahkan Singh in 1993. At the time, the INS was not aware that Makhan Singh, Makkhan Singh, and Billa Singh were the same individual.

Singh also filed a form G-325A in connection with an employment application, giving his name as Billa Singh and his birth-year as 1963. This information contradicted his 1993 G-325A and request for asylum in which he gave his first name as Makhan and his birth-year as 1962. Singh also denied having used any aliases, which was contradicted by his affidavit upon entry to this country giving his name as Makkhan Singh. Singh further provided contradictory information regarding his previous addresses. He provided a false date of arrival and false location of entry into the United States. Finally, he averred that he had never applied for asylum in the United States.

While Singh's 1994 asylum application under the name Billa Singh was pending, the INS sent a notice on January 11, 1995, to "Makkhan Singh" directing him to report for removal on February 14, 1995. The name Makkhan Singh was used since that was the name set forth on the November 1994 exclusion order.

Singh did not report for removal. "Billa Singh" was granted an interview with an asylum officer in San Francisco on March 28, 1995, to whom he stated he was a member of the Sikh religion from the state of Punjab. Singh asserted that if returned to India, he would likely be arrested, detained, tortured, and imprisoned for life or killed by the Indian government because of his religion and his work towards a separate state for Sikhs. Petitioner asserted that his eldest brother (also a Sikh), as well as many of his Sikh friends, had been killed by the Punjabi police. Following the interview the INS asylum officer found Singh to be believable, consistent, detailed, and credible, and that his asserted fears were consistent will reports of then-prevailing conditions in India. See Exhibit F to the Petition. The asylum officer found that Petitioner had a well-founded fear of future persecution based upon his Sikh religious affiliation and the allegation that his brother had been killed by the Punjabi police. On April 11, 1995, Petitioner was notified by letter addressed to "Billa Singh" that his asylum request based on the December 1994 application had been granted.

On June 24, 1996, "Billa Singh" signed another G-325A in conjunction with an Application to Register Permanent Residence or Adjust Status (Form I-485), which was filed on July 2, 1996. The biographical information provided by Singh in this application was consistent with that provided in the 1994 forms but inconsistent with that provided in the 1993 forms.

On June 25, 1997, Singh appeared before an immigration officer as "Billa Singh" for an interview in connection with his status adjustment. The immigration office ran a fingerprint check and discovered that Singh had previously been ordered excluded and denied asylum under the name of Makkhan Singh and a different A number. In light of these revelations, the application for permanent resident status was not granted.

On August 25, 1997, the INS rescinded Singh's asylum status in a letter titled "Rescission of Asylum Approval" addressed to "Billa Singh a/k/a Makhan Singh" and listing both of Singh's "A numbers". The letter notes that Singh had been ordered excluded and, "[i]n accordance with Title 8 Code of Federal Regulations 208.2, Immigration Judges have 'exclusive jurisdiction over asylum applications filed by an alien who has been served [with]. . . Form I-122, Notice to Applicant for Admission Detained for a Hearing Before an Immigration Judge . . . .'" Rescission Letter (citing former 8 C.F.R. § 208.2(b)(3)). The First Rescission Letter concluded by stating, "[t]he INS did not have jurisdiction over your asylum application, because you were placed in exclusion proceedings prior to the filing of your affirmative asylum application. Therefore, the decision to grant your asylum is rescinded as of August 25, 1997. . . ." Id. The Rescission of Asylum Approval letter notified Singh that he could pursue his request for asylum before the Executive Office for Immigration Review ("EOIR"). Id.

-6-

Singh did not respond to the First Rescission Letter and did not pursue his request for asylum before the EOIR. He apparently moved from California to Buffalo, New York, in October 1998, where he has been residing and working ever since. Singh eventually retained counsel (his current attorneys) who, on March 5, 2001, requested and received an extension of 30 days in which respond to the Rescission of Asylum Approval.

Following consideration of the submission by Singh's attorneys, the INS issued a second Notice of Rescission of Asylum. The basis for the rescission was contained in the INS Procedures Manual for the Office of International Affairs (Asylum Division), dated January 18, 2000, which states that where an applicant is under the jurisdiction of the EOIR at the time asylum is approved–as Singh was–the asylum office does not have jurisdiction and any asylum approval issued under such circumstances must be rescinded.

In 2002, Singh filed a 28 U.S.C. § 2241 petition challenging the exclusion order in this Court. See Singh v. Holmes, Docket No. 02-CV-0121(WMS)(W.D.N.Y.). While this petition was pending, Congress passed the REAL ID Act, which divested the district courts of jurisdiction over challenges to exclusion and removal orders. In particular, Section 106(c) REAL ID Act of the requires that any case pending in district court on the date of enactment that was brought challenging an order of removal under the general habeas statute, 28 U.S.C. § 2241, be transferred to the court of appeals for the circuit "in which a petition for review could have been

properly filed." The court of appeals is to "treat the transferred case as if it had been filed pursuant to a petition for review" under 8 U.S.C. § 1252, except that the thirty-day deadline ordinarily imposed on such petitions by 8 U.S.C. § 1252(b)(1) does not apply. Marquez-Almanazar v. INS, 418 F.3d 210, 215 (2d Cir. 2005) (citing Pub. L. No. 109-13, § 106(c), 119 Stat. 231, 311 (2005)). This Court (Skretny, D.J.) transferred Singh's 2002 habeas petition to the Ninth Circuit in 2005, since the underlying exclusion order had been issued by an IJ in California.

The Ninth Circuit summarily dismissed the petition on December 14, 2009. Singh v. Holder, 357 Fed. Appx. 161, at *161, 2009 WL 4825226, at **1 (9th Cir. Dec. 14, 2009) ("We lack jurisdiction over Singh's contentions that the IJ's November 29, 1994, exclusion order is not valid because Singh failed to exhaust his administrative remedies. See 8 U.S.C. § 1252(d)(1)[5]; Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). To the extent Singh is challenging the government's decision to execute the exclusion order, we lack jurisdiction. See 8 U.S.C. § 1252(g).").

In his present 28 U.S.C. § 2241 petition filed in this Court on June 14, 2010, Singh seeks to have this Court consider matters relating to the INS's grant and rescission of asylee status. Significantly, however, Singh does not challenge the legality of the exclusion order entered in November 1994. Nor does he dispute

---

[5]

Title 8 U.S.C., § 1252(d)(1) provides that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1).

that he is in fact the person identified as Makhan Singh. See Petition, ¶¶ 11-12. In fact, Singh acknowledged his use of the two different names, Makhan Singh and Billa Singh, in his affidavit of January 28, 2000. See Affidavit, attached as an exhibit to the Vaccaro Decl., pp. 39-42 (Docket No. 5-2). Thus, Singh does not dispute that the fingerprint check performed by the INS confirms that Billa Singh and Makhan Singh are the same person.

Respondents have moved pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), for dismissal of the Petition for lack of jurisdiction and for failure to state a claim upon which relief may be granted. Alternatively, Respondents have moved for summary judgment in accordance with Fed. R. Civ. P. 12(d).Respondents argue, inter alia, that Singh has failed to establish any basis for subject matter jurisdiction; Singh has failed to exhaust his administrative remedies; pursuant to 8 U.S.C. § 1158(a)(2)(C), an alien who has filed a previous asylum application that has been denied may not apply again for asylum; aliens, such as Singh, have no liberty or property interest in asylum that warrants Fifth Amendment protection; and Singh cannot meet the requirements for mandamus relief. In short, Respondents argue, there is no legal basis for this Court to exercise jurisdiction and, moreover, that there is no legal basis for the relief sought in Singh's Petition. Singh has filed a Statement of Material Facts, a number of which Respondents dispute. After reviewing the record, the Court agrees with Respondents that any purported factual disputes are immaterial to the resolution of the instant proceeding.

The parties have extensively briefed the issues and the matter is ripe for decision. As discussed more fully _infra_, Respondent's motion for summary judgment dismissing the petition is granted.

## III.   **The Jurisdictional Issues**

### A.   **Divestiture of Jurisdiction by the INA**

Respondents characterize Singh's Petition as "no more than a thinly disguised attempt to collaterally attack his removal order on constitutional grounds[,]" which this Court is precluded from reviewing based upon the REAL ID Act of 2005 ("the RIDA"), Pub. L. No. 109-13, 119 Stat. 231, 310-311 (May 11, 2005). Respondents' Memorandum of Law ("Resp't Mem.") at 4 (Docket No. 6). Respondents note that district court jurisdiction over final orders of removal was eliminated by the RIDA, which vested such review solely and exclusively in the circuit courts of appeal. _Id._ (citing 8 U.S.C. § 1252(a)(5)). The Government contends that the effect of the RIDA is to divest this Court of jurisdiction to adjudicate any legal issue that is intertwined with Singh's 1994 order of exclusion, unless such a question is entirely independent of the exclusion order. _See_ _Calcano Martinez v. INS_, 232 F.3d 328, 340 (2d Cir. 2000).

Singh asserts that jurisdiction lies under the Immigration and Nationality Act of 1952, as amended ("the INA"); the Administrative Procedures Act ("APA"), 5 U.S.C. § 703; the Mandamus Act, 28 U.S.C. § 1361; the statute providing for federal question jurisdiction, 28 U.S.C. § 1331; the Declaratory Judgment Act, 28 U.S.C. § 2201 _et seq.;_ and the All Writs Act, 28 U.S.C. § 1651. With regard to the

preclusive effect of the RIDA, Singh argues that his habeas petition is not seeking to challenge the 1994 exclusion order,[6] and therefore this Court has not been divested of jurisdiction over his claim by 8 U.S.C. § 1252(a). Instead, Singh argues that the instant petition only seeks to challenge the legality of the INS's decision to rescind his grant of asylum by way of the First and Second Rescission Letters. Singh essentially contends that the challenge to the rescission of asylum amounts to a challenge to the legality of his detention, since a alien who has been granted asylum cannot as a matter of law be detained by the federal government for purposes of effectuating deportation. Singh maintains that his present habeas challenge is substantively unrelated to the 1994 order of exclusion.

As Respondents note, Section 106(a) of the RIDA made several significant amendments to the Immigration and Nationality Act's jurisdictional statute at 8 U.S.C. § 1252. Most important for purposes of this matter is the RIDA's divestiture of federal district courts' jurisdiction-habeas or otherwise-over any removal order for any alien, criminal or non-criminal. E.g., Spina v. Department of Homeland Sec., 470 F.3d 116, 124 (2d Cir. 2006) (quotation omitted). District courts retained jurisdiction only over an alien's challenge to his detention in custody by the immigration authorities. Hernandez v. Gonzales, 424 F.3d 42, 42-43

---

[6]

Singh concedes, as he must, that no further review is possible of the exclusion order, now that the Ninth Circuit has dismissed has petition for review.

(1st Cir. 2005) (citing H.R. Cong. Rep. No. 109-72, at 2873 (May 3, 2005) ("As indicated in the legislative history of the Act, those provisions were not intended to "preclude habeas review over challenges to detention that are independent of challenges to removal orders.") and collecting cases)).

This is an unsettled area of law. The Second Circuit has not directly addressed the factual circumstances presented by Singh's case, and district courts throughout the country have reached differing conclusions on the effect of the REAL ID Act on such claims. Also unsettled is the question of whether federal district courts have subject matter jurisdiction over claims attacking the legality of decisions regarding asylum status, with district courts again arriving at conflicting conclusions.

**B.   The Existence of Subject Matter Jurisdiction**

Respondents argue that even assuming the REAL ID Act does not divest this Court of jurisdiction, Petitioner has not affirmatively established the existence of subject matter jurisdiction under any of the bases asserted. On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the district court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff . . . but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Morrison v. National Australia Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (quotations and citations omitted). The district court is free to consider materials dehors the pleadings.

Id. Jurisdiction is to be shown affirmatively and the court is to refrain from "drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Norton v. Larney, 266 U.S. 511, 515 (1925)).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A petitioner asserting subject matter jurisdiction has the burden of proving that such subject matter jurisdiction exists. Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996) ("The burden of proving jurisdiction is on the party asserting it.").

Title 28 U.S.C., § 1331, commonly referred to as the federal question statute, confers jurisdiction on the district courts over actions "arising under" federal law. Specifically, § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331. "An action arises under a federal statute where the statute creates or is a necessary element of the cause of action or the plaintiff would prevail if the statute were construed one way and lose if it were construed another." Cordoba v. McElroy, 78 F. Supp.2d 240, 243 (S.D.N.Y. 2000). Thus, federal question jurisdiction exists where "(1) the claim turns on an interpretation of the laws or Constitution of the United States and (2) the claim is not 'patently without merit.'"

_Batista v. INS_, No. 99 Civ. 2847, 2000 WL 204535, at *3 (S.D.N.Y. Feb.22, 2000) (quoting _Bell v. Hood_, 327 U.S. 678, 683-85 (1946)).

Title 28 U.S.C., § 1331, "standing alone, does not confer subject matter jurisdiction." _Huli v. Way_, 393 F. Supp.2d 266,2 71 (S.D.N.Y. 2005); _see also_ _Farag v. USCIS_, 531 F. Supp.2d 602, 606-07 (S.D.N.Y. 2008). Instead, Section 1331's jurisdiction "extends only to claims that arise from some other applicable federal constitutional or statutory provision." _Id._ (citation omitted)

Nor does the Declaratory Judgment Act provide an independent basis for jurisdiction. _See_ _Air Line Pilots Ass'n, Intern. v. Trans World Airlines, Inc._, 713 F.2d 940, 949 (2d Cir. 1983) ("[I]t is unquestioned that the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, which provides that in 'a case of actual controversy within its jurisdiction,' a federal court 'may declare the rights and other legal relations of any interested party,' does not itself create any federal jurisdiction. The Declaratory Judgment Act provides an additional remedy in cases resting on some independent basis of federal jurisdiction.") (citing _Miller-Wohl Co. v. Commissioner of Labor and Industry, State of Montana_, 685 F.2d 1088, 1090 (9th Cir. 1982)), _aff'd in part and rev'd in part on other grounds sub nom. Trans World Airlines, Inc. v. Thurston_, 469 U.S. 111 (1985).

Similarly, the APA in an of itself does not constitute an independent basis for subject matter jurisdiction. _See, e.g._, _Califano v. Sanders_, 430 U.S. 99, 107 (1977) ("[T]he APA does not

afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action.") (footnote omitted). A district court, however, may have subject matter jurisdiction under 28 U.S.C. § 1331 over a claim that an agency has violated the APA. <u>Califano</u>, 430 U.S. at 105; <u>see</u> <u>also</u>, <u>e.g.</u>, <u>Reiner v. West Village Associates</u>, 768 F.2d 31, 33 (2d Cir. 1985) (<u>per</u> <u>curiam</u>).

As the statutes cited by Petitioner do not confer jurisdiction in and of themselves, Petitioner must establish jurisdiction based upon the Mandamus Act, the All Writs Act, the INA, or the APA, working in conjunction with 28 U.S.C. § 1331 or 28 U.S.C. § 2241.

**C.   Analysis**

Unfortunately, the Court's task in determining jurisdiction has not been made easier by Petitioner or Respondents. In conducting its independent research, the Court has encountered a dearth of case-law addressing this precise issue. The most apposite case discovered in this Court's research is <u>Gurmit Singh v. Vasquez</u>, No. CV-08-1901-PHX-MHM, 2009 WL 3219266 (D. Ariz. Sept. 30, 2009), <u>aff'd</u>, No. 09-17400, 2011 WL 3841271 (9th Cir. Aug. 31, 2011) (unpublished slip opn.). The petitioner in that case, Gurmit Singh, a/k/a Manjeet Singh, was charged with being excludable from the United States because he did not possess a valid visa or traveling documents. At the time of his entry, he gave the INS inspectors a false name and birth-date. He also informed the inspectors that he wanted to apply for asylum. <u>Gurmit Singh</u>, 2009 WL 3219266, at *1.

After failing to appear for exclusion hearing, an IJ held him excludable in absentia. While the exclusion proceedings before the IJ were pending, the petitioner applied for asylum with the INS under his real name. This application was granted.

In the course of seeking to obtain legal permanent resident status, the petitioner in the Arizona case eventually informed the INS that he had not been wholly forthcoming on his asylum application given that he had falsely denied being subject to exclusion proceedings in New York at the time. As a consequence, the INS rescinded his asylum status in a letter. Gurmit Singh v. Vasquez, 2009 WL 3219266, at *2.

The petitioner in Gurmit Singh then filed a 28 U.S.C. § 2241 petition in federal district court in Arizona arguing that asylum rescission, which was carried out by letter, violated his rights to procedural due process under the Fifth Amendment to the United States Constitution. The district court agreed with the petitioner that the REAL ID Act did not preclude judicial review of the revocation of asylum by the INS because his "attempt to seek habeas review of this decision is not akin to challenging the validity of the 1993 order of exclusion, since the grant of asylum was unrelated to the order of exclusion." Gurmit Singh v. Vasquez, 2009 WL 3219266, at *4. Rather, the issue of whether the petitioner was an asylee went to the issue of the appropriateness of his confinement, and the REAL ID Act did not bar judicial review of such a claim through the procedural mechanism of a petition for the writ of habeas corpus. Id.

As does Singh in this case, the petitioner in the <u>Gurmit Singh</u> matter asserted jurisdiction under the INA, APA, and the Mandamus Act. The district court, after finding that the REAL ID Act did not divest jurisdiction over the asylum-related claim, did not address the affirmative bases for jurisdiction. On appeal, the Ninth Circuit held, without discussion, that the district court "properly exercised jurisdiction under [28 U.S.C.] § 2241." <u>Gurmit Singh</u>, 2011 WL 3841271, at *1 (citing <u>Nadarajah v. Gonzales</u>, 443 F.3d 1069, 1075 (9th Cir. 2006)) ("[T]his provision [of the REAL ID Act] only applies to federal habeas corpus jurisdiction over 'final orders of removal.' By its terms, the jurisdiction-stripping provision does not apply to federal habeas corpus petitions that do not involve final orders of removal.") (internal citation omitted)). <u>Accord</u>, <u>e.g.</u>, <u>Jarnail Singh v. Bardini</u>, No. C-09-3382 EMC, 2010 WL 308807 (N.D. Cal. Jan. 19, 2010).

District court cases addressing claims based on asylum and derivative-asylum applications have differed on the issue of whether there exists an affirmative basis for jurisdiction under the APA, the INA, or the Mandamus Act, in conjunction with 28 U.S.C. § 1331. <u>Contrast</u> <u>Sidhu v. Bardini</u>, No. C 08-05350 CW, 2009 WL 1626381, at *4 (N.D. Cal. June 10, 2009) (holding that petitioners established subject matter jurisdiction under the APA, 5 U.S.C. § 704, because government's decision to terminate petitioners' asylum status was a "final agency action"); <u>Singh v. United States Citizenship and Immigration Services</u>, 2011 WL 1485368, at *7 (N.D. Ill. Apr. 11, 2011) ("The complaint alleges

that defendants violated 8 C.F.R. § 208.24(c) by failing to supply the reasons for their intent to terminate plaintiff's asylum status in the NOIT, by failing to provide plaintiff with a meaningful opportunity to present evidence showing that he is still eligible for asylum, and by failing to provide plaintiff with at least thirty days in which to prepare a response to the allegations against him. The Court finds that these allegations are sufficient to state a claim [under the APA].”); Gurtej Singh v. Chertoff, No. C05-1454 MHP, 2005 WL 2043044, at *3 (N.D. Cal. Aug. 24, 2005) (similar); with Qureshi v. Holder NO. CIV.A. 10-1861, 2010 WL 5141877, (E.D. La. Dec. 10, 2010) (finding that the termination of plaintiffs' asylum status cannot be considered a final agency action; termination was not the consummation of the agency's decision-making process and there was no “no convincing authority that the immigration judge administering the removal proceedings cannot decide that the termination of asylum was improper”); Nyemba v. Prendes, No. CIV-06-0772-HE, 2006 WL 3300448, at *3 n.8 (W.D. Okla. Oct. 24, 2006) (finding that habeas jurisdiction stripped by the REAL ID Act and observing, in dicta, that court had no affirmative jurisdiction under the Declaratory Judgment Act, APA, or 28 U.S.C. § 1331, over petitioner's claim of due process violation in connection with asylum hearing). It is a close question, as both positions have been well-argued in the competing opinions.

After review, the Court agrees with the decisions finding jurisdiction under 28 U.S.C. § 2241. See, e.g., Gurtej Singh v.

Chertoff, 2005 WL 2043044, at *2; Gurmit Singh, 2011 WL 3841271, at *1. "As a general rule, 28 U.S.C. section 2241 confers jurisdiction upon the district court to entertain petitions for a writ of habeas corpus brought by any individual claiming to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" Gurtej Singh, 2005 WL 2043044, at *2 (quoting 28 U.S.C. § 2241(e)(3)). "Absent a specific statutory provision limiting the scope of its habeas jurisdiction, a district court has the authority to entertain constitutional questions raised by aliens detained by federal immigration officials." Id. (citing INS v. St. Cyr, 533 U.S. at 314; Nakaranurack v. United States, 68 F.3d 290, 293 (9th Cir. 1995). As discussed further below, Singh alleges a constitutional question–namely, a violation of his Fifth Amendment right under the Constitution to procedural due process in connection with the INS's failure to follow the proper procedures in terminating his asylum. Accordingly, the Court finds that it has jurisdiction to entertain Singh's due process claim under 28 U.S.C. § 2241. Accord, e.g., Gurtej Singh, 2005 WL 2043044, at *4 (footnote omitted); Gurmit Singh, 2011 WL 3841271, at *1.

In light of this conclusion, the Court need not address the remaining bases for subject matter jurisdiction asserted by Singh.

## IV.  Merits of Petitioner's Claims

### A. Statutory and Regulatory Background

#### 1. Relevant Exclusion Proceeding Provisions

When Singh arrived in 1993, an alien who arrived at a United States port of entry seeking admission was required to submit to

inspection by an immigration officer. <u>See</u> 8 U.S.C. § 1225(a)(1) (West 1993); 8 C.F.R. § 235.1(a), (d) (West 1993). If the officer determined that the alien was inadmissible because the alien lacked valid entry documents (such as a valid visa), 8 U.S.C. § 1182(a)(7) (West 1993), the officer placed the alien in exclusion proceedings before an immigration judge. <u>See</u> 8 U.S.C. § 1225(a), (b) (West 1993); 8 C.F.R. § 235.3(b) (West 1993); 8 C.F.R. § 235.6 (West 1993). When referring an arriving alien to an immigration judge for exclusion proceedings, immigration inspectors served the arriving alien with a charging document, the Notice to Alien Detained for Hearing by an Immigration Judge, known as a Form I-122. <u>See</u> 8 C.F.R. § 235.6(a) (1993).

### 2. Relevant Jurisdiction and Termination Provisions Regarding Asylum

Congress has provided that "[t]he Attorney General shall establish a procedure for an alien . . . to apply for asylum, and [that] the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee." 8 U.S.C. § 1158(a) (1993). However, Congress also provided that "[a]sylum granted . . . does not convey a right to remain permanently in the United States, and may be terminated" under certain circumstances. 8 U.S.C. §1158(c)(2) (1999). Congress delegated to the Attorney General the authority to establish a procedure for an alien to apply for asylum. See 8 U.S.C. § 1158(a) (1993). The INS promulgated asylum regulations, <u>see</u> 8 C.F.R.

§ 208.1, et seq., which establish the procedure for granting and terminating asylum.

The immigration regulations governing asylum applications provide that

> Immigration Judges shall have exclusive jurisdiction over asylum applications filed by an alien who has been served notice of referral to exclusion proceedings under part 236 of this chapter, or served an order to show cause under part 242 of this chapter, after a copy of the charging document has been filed with the Office of the Immigration Judge. The Immigration Judge shall make a determination on such claims de novo regardless of whether or not a previous application was filed and adjudicated by an Asylum Officer prior to the initiation of exclusion or deportation proceedings. Any previously filed but unadjudicated asylum application must be resubmitted by the alien to the Immigration Judge.

See 8 C.F.R. § 208.2(b) (West 1994). Regulations governing the filing of asylum applications in 1994, when Singh applied for asylum for the second time with the INS, also provided that "[i]f exclusion or deportation proceedings have been commenced against an alien . . . an initial application for asylum . . . shall be filed with the Office of the Immigration Judge." 8 C.F.R. § 208.4(c)(1) (West 1994).  If exclusion proceedings have concluded, "an initial application for asylum or withholding of deportation shall be filed with the Office of the Immigration Judge having jurisdiction over the prior proceeding in conjunction with a motion to reopen pursuant to 8 CFR 3.8, 3.22 and 242.22 where applicable." 8 C.F.R. § 208.4(c)(2) (West 1994).

The INS also established regulations for the termination of asylum granted under the INS's jurisdiction See 8 C.F.R. § 208.24

(West 1994). These regulations provided in pertinent part as follows:

> (a) Revocation of asylum by the Assistant Commissioner, Office of Refugees, Asylum, and Parole. Upon motion by the Assistant Commissioner and following a hearing before an Asylum Officer, the grant to an alien of asylum made under the jurisdiction of an Asylum Officer may be revoked if, by a preponderance of the evidence, the Service establishes that:
>
> (1) The alien no longer has a well-founded fear of persecution upon return due to a change of conditions in the alien's country of nationality or habitual residence;
>
> (2) There is a showing of fraud in the alien's application such that he was not eligible for asylum at the time it was granted; or
>
> (3) The alien has committed any act that would have been grounds for denial of asylum under s 208.14(c).
>
> . . .
>
> (c) Notice to applicant. Upon motion by the Assistant Commissioner to revoke asylum status or withholding of deportation, the alien shall be given notice of intent to revoke, with the reason therefore, at least thirty days before the hearing by the Asylum Officer. The alien shall be provided the opportunity to present evidence tending to show that he is still eligible for asylum or withholding of deportation. If the Asylum Officer determines that the alien is no longer eligible for asylum or withholding of deportation, the alien shall be given written notice that asylum status or withholding of deportation along with employment authorization are revoked.
>
> . . .
>
> (f) Review. The Office of the Deputy Attorney General, assisted by the Asylum Policy and Review Unit, shall have authority to review decisions to revoke asylum or withholding of deportation, before they become effective, in any cases designated pursuant to 28 CFR 0.15(f)(3). There shall be no right of appeal to the Office of the Deputy Attorney General or to the Asylum Policy and Review Unit and parties shall have no right to appear before such offices in the course of such review.
>
> . . .

8 C.F.R. § 208.24 (West 1994).

### 3.   The Government Erroneously Failed to Follow the Correct Procedures

Respondents contend that when the INS granted Singh asylum, it was without jurisdiction to do so and the grant of asylum was therefore ultra vires. Respondents reason that because the grant of asylum was ultra vires, it was without legal effect and void ab initio. Respondents conclude that since the grant of asylum was void, the INS was not required to follow the termination procedures set forth in the applicable regulations; rather, such procedures only apply when asylum has been properly granted. Respondents argue that the INS was not actually divesting Singh of a substantive right because he never legally had the right to asylum in the first place. Lacking any protectible liberty interest, Singh was not due any particular process in being notified about the rescission of asylum.

The district court and the Ninth Circuit rejected an identical argument in Gurmit Singh, 2009 WL 32192266, at *4-5; Gurmit Singh, 2011 WL 3841271, at *1. The Ninth Circuit held that the district court correctly found that the INS improperly rescinded Singh's asylum status by means of a letter, and that the agency should have followed the applicable termination procedures set forth in the regulations. Specifically, as in this case, the INS was required—prior to the termination of the grant of asylum—to give "notice of intent to terminate" and "provide[] . . . the opportunity to present evidence showing that he . . . still eligible for asylum or

withholding of deportation or removal." 8 C.F.R. § 208.24(c) (West 1994).

Contrary to Respondents' argument, these procedures were held to apply even where, as here, the INS lacked jurisdiction to grant asylum in the first place. Title 8, C.F.R. § 208.23(a) (1998) uses the phrase "made under the jurisdiction of" to distinguish between the termination procedures that apply when asylum was granted by the INS and those that apply when asylum was granted by an immigration judge. Compare 8 C.F.R. § 208.24(a) (West 1994) ("Revocation of asylum by the Assistant Commissioner, Office of Refugees, Asylum, and Parole") with id., § 208.24(g) (West 1994) ("Revocation of asylum or withholding of deportation by the Executive Office for Immigration Review."). There is no indication that the phrase is used to distinguish between statutorily-proper and ultra vires grants of asylum by the INS. Accordingly, the Court finds that the plain language of 8 C.F.R. § 208.24 (West 1994) required the INS to follow the procedures set forth in 8 C.F.R. § 208.24(c) (West 1994)-i.e., notice, an interview, and the opportunity to present evidence-before terminating Singh's asylee status. See Gurmit Singh, 2011 WL 3841271, at *1.

### 4.   The Internal Agency "Asylum Procedures Manual"

Respondents argue that the "immigration manual of the Office of International Affairs Asylum Division" ("the Asylum Procedures Manual") sets forth the proper procedure which "was a rescission of the grant of asylum," and supersedes the language found in the regulations Respondent's Reply Memorandum of Law ("Resp. Reply

Mem.") at 4 (Docket No. 13) (citing Vaccaro Decl. ¶ 38 and at Exhibit A, p. 38). Respondents quote the "asylum procedures manual" which states, in relevant part, as follows:

> Rescission of an Asylum Approval Based on Lack of INS Jurisdiction. Lack of jurisdiction over an asylum application is not grounds for termination under 8 CFR § 208.22. There may be instances, however, when an asylum office learns that an applicant was under the jurisdiction of EOIR [Executive Office of Immigration Review, i.e., immigration court judge proceeding] at the time of the Asylum Approval, so the asylum office did not have jurisdiction to hear the claim. In these cases, the asylum office rescinds asylum status.

Resp't Reply Mem. at 4 n.5 (quoting Office of International Affairs Asylum Division, Jan. 8, 2000) (quoted in Vaccaro Decl., Exh. A, p. 38)). The Court has been unable to find a corresponding provision concerning "rescission of asylum" in the applicable Code of Federal Regulations. As Petitioner points out, the procedures in the Asylum Procedures Manual are not codified in the applicable regulations, and indeed appear to contravene those regulations. Accordingly, the Court rejects Respondents' argument that the agency's internal "asylum procedures manual" controls, especially where it contradicts the clear language of the regulations. See Lin v. United States Dept. of Justice, 459 F.3d 255, 262 (2d Cir. 2006)("Where, as here, the BIA's interpretation of a regulation is inconsistent with the plain language of the regulation, we owe no deference to its interpretation.") (citation omitted). The Court concludes that the INS improperly rescinded Singh's asylum status by means of a letter.

5.   **The Existence of a Due Process Liberty Interest**

Notwithstanding that the INS acted in a manner contrary to 8 C.F.R. § 208.24(c) (West 1994) when it rescinded Singh's grant of asylum via a letter, habeas relief is not available unless Singh can prove that the manner in which his asylee status was terminated amounted to the violation of a right guaranteed by the federal constitution. <u>See</u> 28 U.S.C. § 2254(a). Simply because the INS's actions were inconsistent with the applicable regulations does not mean that a right under the federal constitution was similarly violated. "Whereas an alien within the country is entitled to the protection of the Due Process Clause, whatever process Congress has authorized will satisfy the Constitution with respect to an alien requesting admission." <u>Borrero v. Aljets</u>, 325 F.3d 1003, 1007 (8th Cir. 2003) (citing <u>Landon v. Plasencia</u>, 459 U.S. 21, 33-35 (1982) ("[C]ontrol over matters of immigration is a sovereign prerogative, largely within the control of the Executive and the Legislature.")).

"Even if there is no constitutional right to be granted asylum, that does not necessarily mean that, once granted, asylum status can be taken away without any due process protections." <u>Singh v. Bardini</u>, No. C-09-3382 EMC, 2010 WL 308807, at *7 (N.D. Cal. Jan. 19, 2010) (citing <u>Singh v. Vasquez</u>, 2009 WL 3219266 (stating that an alien admitted into the United States under a grant of asylum is "undoubtedly entitled to procedural due process under the Fifth Amendment") (citing <u>Martinez-De Bojorquez v. Ashcroft</u>, 365 F.3d 800, 803-04 (9th Cir. 2004)); <u>see also Xiao Ji</u>

Chen v. United States Dept. of Justice, 434 F.3d 144, 155 (2d Cir. 2006) (alien petitioned for review of the decision of the Board of Immigration Appeals (BIA), affirming the decision of(IJ) denying her application for asylum and withholding of removal; court held that "[t]o the extent that she intends to assert a claim pursuant to the Due Process Clause, she has brought a 'constitutional claim[]' that [it] may review").

Although "Makkhan Singh" was denied entry and was subject to an exclusion order, "Billa Singh" was granted asylum by the INS–albeit erroneously. A grant of asylum itself is provisional in nature and may be terminated at the discretion of the Attorney General, see INS v. Cardoza-Fonseca, 480 U.S. 421, 443 (1987)("[A]n alien who satisfies the applicable standard under [8 C.F.R.] § 208(a) does not have a right to remain in the United States; he or she is simply eligible for asylum, if the Attorney General, in his discretion, chooses to grant it.") (emphasis in original). However, "[t]hat is not to say that due process affords no protection to an alien who faces the revocation of his or her asylum status." Satwinder Singh, 2005 WL 2043044, at *5. Based upon its review of the caselaw in this area, the Court finds that Singh has asserted a cognizable procedural due process right. See Xiao Ji Chen, 434 F.3d at 155; see also, e.g., Satwinder Singh v. Chertoff, 2005 WL 2043044, at *6.

### 6.    Petitioner Cannot Demonstrate Prejudice as a Result of the INS's Error.

Although Singh has demonstrated that the INS did not follow the correct procedures in terminating his asylum, he nevertheless cannot succeed on his due process claim. This is because he is unable to demonstrate prejudice—that the INS's conduct potentially affected the outcome of the proceedings.

"To establish a violation of due process, an alien must show that [he] was denied a full and fair opportunity to present [his] claims or that the [INS] . . . otherwise deprived [him] of fundamental fairness." Burger v. Gonzales, 498 F.3d 131, 134 (2d Cir. 2007) (internal quotation marks omitted). The petitioner must also show that he was prejudiced by the alleged denial of due process. See, e.g., Garcia-Villeda v. Mukasey, 531 F.3d 141, 149 (2d Cir. 2008) ("Parties claiming denial of due process in immigration cases must, in order to prevail, allege some cognizable prejudice fairly attributable to the challenged process. Petitioner fails to demonstrate how the alleged shortcomings have prejudiced the outcome of his case.") (internal citations omitted).

Even if INS had provided Singh with notice, a hearing before a neutral arbiter, and the opportunity to present evidence (i.e., the protections afforded under 8 C.F.R. § 208.24(c) (West 1994)), the agency would have reached the same result and terminated Singh's asylum. This is because under 8 C.F.R. § 208.2(b) (West 1994), the IJ presiding over Singh's exclusion proceedings had exclusive jurisdiction to determine asylum:

> Immigration Judges shall have exclusive jurisdiction over asylum applications filed by an alien who has been served notice of referral to exclusion proceedings under part 236 of this chapter, or served an order to show cause under part 242 of this chapter, after a copy of the charging document has been filed with the Office of the Immigration Judge. The Immigration Judge shall make a determination on such claims <u>de</u> <u>novo</u> regardless of whether or not a previous application was filed and adjudicated by an Asylum Officer prior to the initiation of exclusion or deportation proceedings. Any previously filed but unadjudicated asylum application must be resubmitted by the alien to the Immigration Judge.

8 C.F.R. § 208.2(b) (West 1994). The record establishes beyond cavil that the notice of referral to exclusion proceedings was filed with the immigration court well before Singh had submitted his request for asylum to the INS. As set forth above, the notice of referral to exclusion proceedings had been served on him before the second application in December 1994. Indeed, the exclusion hearing had been held, and an order of exclusion had been entered—although it was never executed. Because Singh had undoubtedly had "been served notice of referral to exclusion proceedings" as of December 1994, only an IJ had jurisdiction to determine Singh's eligibility for asylum. <u>See</u> 8 C.F.R. § 208.2(b) (West 1994). Because it is clear that the INS lacked jurisdiction over Singh's asylum application at the time it granted asylum in April 1995 based upon the December 1994 application, Singh was not prejudiced by the failure of the INS to allow him to submit evidence and to appear at an interview prior to terminating his asylum. This is because the agency could have reached no other conclusion, but that it was required to terminate Singh's asylum

status since it had no jurisdiction initially to determine Singh's eligibility for asylum. See Gurmit Singh, 2011 WL 3841271, at *2.

Even if he submitted his request for asylum to the INS before the notice of referral to exclusion proceedings was filed with the immigration court, he was still required by the applicable regulations to submit his claim for asylum to the immigration judge at his exclusion hearing. Under such circumstances, the IJ would have been required to make a determination on the asylum claim de novo, regardless of whether or not a previous asylum application had been filed and adjudicated by the INS. In other words, even if the INS had granted asylum prior to Singh being placed in exclusion proceedings, the IJ would have been required to review that determination de novo once exclusion proceedings commenced. See 8 C.F.R. § 208.2(b) (West 1994) ("The Immigration Judge shall make a determination on such claims de novo regardless of whether or not a previous application was filed and adjudicated by an Asylum Officer prior to the initiation of exclusion or deportation proceedings.").

Although he was not provided with a hearing before an asylum officer at that time, as was required in a termination proceeding, see 8 C.F.R. § 208.24(c) (West 1994), Singh did receive a full hearing on his asylum claim at his exclusion proceeding before the IJ. However, after considering the proffered evidence in support of asylum, the IJ denied the request. Cf. Satwinder Singh v. Chertoff, ("[A]ny alien whose asylum status is terminated has the opportunity to reapply for asylum and establish his or her eligibility for

asylum status during deportation proceedings brought under 8 C.F.R. section 208.24(e).  See generally 8 C.F.R. § 1208.2. Such proceedings afford an alien the full panoply of procedural protections that attach when [the Government] seeks to remove an individual from the United States, including the right to examine the evidence against him or her, the right to present evidence to support his or her case, and the right to cross-examine witnesses presented by the government. See 8 U.S.C. §§ 1229a(b)(2), (4).").

Moreover, the INS ultimately did permit Singh to re-open the asylum-termination proceedings and submit documentation in support of his eligibility asylum, as provided in 8 C.F.R. § 208.24(c) (West 1994). Thus, he was provided–albeit after the fact–with an opportunity to submit evidence in his behalf.

The Court concludes that notwithstanding INS's failure to follow the proper procedure, Singh was not denied "fundamental fairness" in connection with the termination of asylum–especially given that Singh affirmatively misled the INS regarding his true identity. Notwithstanding the procedural infirmity in the termination of Singh's asylum, the Court cannot find prejudice as the outcome would have been the same regardless of the INS's conduct. See Xiao Ji Chen, 434 F.3d at 155 (holding that alien's constitutional claim of a denial of due process in connection with IJ's refusal to grant asylum was "plainly without merit" where petitioner "point[ed] to nothing in the record suggesting that she was denied a full and fair opportunity to present her claims; nor ha[d] she established that the IJ or BIA otherwise deprived her of

fundamental fairness"); Gurmit Singh, 2011 WL 3841271, at *2 ("Singh's due process claim nonetheless fails because he cannot show prejudice-that the INS'[s] conduct potentially affected the outcome of the proceedings.") (citing Cano-Merida v. INS, 311 F.3d 960, 965 (9th Cir. 2002)).

### 7.   The Preponderance of the Evidence Demonstrates Fraud by Petitioner in the Asylum Application

The regulations provide that a grant of asylum made under the jurisdiction of an INS asylum officer may be revoked if, by a preponderance of the evidence, the INS establishes that "[t]here is a showing of fraud in the alien's application such that he was not eligible for asylum at the time it was granted[.]" 8 C.F.R. § 208.24(b)(2) (West 1994).

Not every factual assertion in an asylum applicant's testimony or application that turns out to be incorrect will support a finding of fraud. Hailemichael v. Gonzales, 454 F.3d 878, 885 (8th Cir. 2006). Instead, fraud requires a demonstration that the applicant actually knew that the factual assertion was false. Id. On the record before it, the Court discerns preponderating evidence of fraud by Singh in his application.

First, Singh made statements that he clearly must have known were untrue. First, he provided demonstrably false biographical information in his second asylum application-specifically, a different name and a different birth-date than that which he provided upon his entry to the United States and in his first, unsuccessful asylum application. He also provided false information

about his date of entry and location of entry to the United States. Furthermore, he provided a different "A number" in his second asylum application.  Cf. Kourski v. Ashcroft, 355 F.3d 1038, 1040 (7th Cir. 2004) ("Without reason to believe that Kourski knew or suspected the forgery, however, proof that [the birth certificate] was a forgery wouldn't be evidence that he was lying."). Furthermore, in the second asylum application, Singh provided an entirely different narrative regarding his fears of persecution. For instance, in the second application he mentioned, for the first time, that his brother had been killed by the police because of his religious affiliation.

In addition to providing false pedigree data and false information concerning his grounds for being declared an asylee, Singh falsely denied having filed a previous asylum application. When asked on the form whether he had applied for asylum in the United States before, Singh answered "No". Again, this was demonstrably untrue, and Singh clearly knew it to be so. Nonetheless, Singh signed the application, declaring that under the penalty of perjury that information he had provided was "true and correct to the best of [his] knowledge and belief."  The false information in the second asylum application, together Singh's affirmative untruth about not having filed a previous asylum application, amount to substantial evidence showing that Singh possessed the intent to deceive the immigration authorities about his true identity. Under these circumstances, the Government would have been justified in finding that a fair preponderance of

evidence supported finding Singh's asylum application was fraudulent and that, as consequence, termination of asylum would have been warranted. See 8 C.F.R. § 8 C.F.R. § 208.24(a)(2) (West 1994).

It bears noting, in conclusion, that "habeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 (1995). "'[E]quitable principles' have traditionally 'governed' the substantive law of habeas corpus[.]" Holland v. Florida, 130 S. Ct. 2549, 2560 (2010) (quotation omitted). "It is a fundamental principle of equity jurisprudence that a court of equity will exercise its extraordinary powers only for the enforcement of the requirements of conscience, and in enforcing them it demands conscientiousness in the parties. . . . A court of justice does not sit for the promotion of fraud on illegality." Primeau v. Granfield, 193 F. 911, 912 (2d Cir. 1911); see also Riggs v. Palmer, 70 Sickels 506, 115 N.Y. 506, 511, 22 N.E. 188, 189 (N.Y. 1889) (stating the fundamental maxim of common law that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim on his own iniquity, or to acquire property by his own crime").

"[T]his 'well defined' . . . policy . . [is] meant to protect the integrity of the courts." Commercial Union Ins. Co. v. Lines, 378 F.3d 204, 209 (2d Cir. 2004) (footnotes omitted; internal quotation and other citations omitted). The maxim stated so long ago by the courts in Riggs and Primeau is "dictated by public policy" and has "nowhere been superseded by statutes[.]" Riggs, 115

N.Y. at 511-12. Indeed, this policy remains "dominant" to this day. Commercial Union Ins. Co., 378 F.3d at 208 (quoting W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, 461 U.S. 757, 766 (1983). If the Court were to exercise its equitable powers to grant relief to Petitioner, it "would violate the principle, 'fundamental in our jurisprudence, that 'a wrongdoer shall not be permitted to profit through his own wrongdoing.'" Commercial Union Ins Co., 378 F.3d at 208 (quoting Perma Life Mufflers, Inc. v. International Parts Corp., 392 U.S. 134, 151 (1968) (Marshall, J., concurring in the result)).

## V.   Conclusion

For the reasons set forth above, Respondent's motion for summary judgment (Docket No. 8) dismissing the petition is granted. The request for a writ of habeas corpus is denied, as are Petitioner's other claims for injunctive and declaratory relief. The Petition (Docket No. 1) is dismissed with prejudice. The stay of removal (Docket No. 3) previously entered by another judge of this Court is vacated. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

DATED:    October 19, 2011
          Rochester, New York

-35-